H_____ P. F_____ et al., Appellants,

v.

B_____ D_____ P_____ et ux., Appellees.

No. 15004.

Court of Civil Appeals of Texas, San Antonio.

Oct. 6, 1971.

Coke R. Stevenson, Junction, John R. Banister, III, Kerrville, for appellants.

Lavern D. Harris, Kerrville, for appellees.

CADENA, Justice.

This is an appeal from the order of the Second 38th District Court of Kerr County permitting appellees to adopt a boy, aged five, whom we shall identify merely as Clint. The appellants, who intervened in the adoption proceedings and filed pleadings opposing the proposed adoption, are Clint's father and mother, who had been divorced prior to the filing of the petition for adoption; two maternal aunts and the maternal grandmother of the boy; and the boy's paternal great uncle, joined by his wife. The hearing below was before the court sitting without a jury.

Clint is the third of five children born to his parents while they were married. The parents were divorced in October, 1969, and the divorce decree awarded custody of Clint and the other four children to their mother. On April 3, 1970, the Second 38th District Court, being the same court which heard and granted the petition for adoption, entered an order in Cause No. 6408 declaring the five children to be "dependent" and terminating the parental rights of their parents.

Neither Clint's father nor mother consented to the adoption. The trial court, purporting to act under the provisions of Article 46a, Sec. 6(c), Vernon's Annotated

Civil Statutes,[1] which authorizes adoption without parental consent under certain circumstances, entered a written order which, after reciting that the parental rights of Clint's father and mother had been terminated by the order of April 3, 1970, granted permission for the adoption of Clint by appellees. This written order states that Clint's father did not appear in such proceedings and was not served with notice of such proceedings because his whereabouts were unknown.

In their pleadings, appellants ask that the order of April 3, 1970, be set aside because Clint's father had no notice of, and did not appear in, the neglected and dependent proceedings which culminated in the termination of the father's parental rights by the order of April 3, 1970, in Cause No. 6408. It was further alleged that there were no facts to support the finding of dependency contained in such order.

█ Where a petition is filed seeking a declaration that a child is dependent and neglected, Article 2332, V.A.C.S., prescribes the necessity for, and the method of, giving notice to the parents. If one or both parents reside in the county where the proceedings are pending, citation, accompanied by a copy of the petition, shall be served on such parent or parents, if either can be found in such county, not less than two days before the time fixed for the hearing. If it appears from the petition "that neither of said parents are living, or do not reside in said county," then citation need not issue.[2]

█ There can be no question that a person whose parental rights have been judicially terminated by a proceeding of which he had no notice and in which he did not appear is absolutely entitled, in a subsequent proceeding, to a full hearing on the issue of whether sufficient facts existed to authorize the prior finding of dependency upon which the termination of parental rights is based. DeWitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687, 691 (1944). In *Brooks*, Chief Justice Alexander used language which would support the conclusion that the burden is on such parent, at the subsequent proceeding, to show ". . . that he had not allowed his child to become a dependent child, . . . ." 182 S.W.2d at 691. However, the Supreme Court of the United States has not taken such a limited view of the procedure which must be followed in order to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. In Armstrong v. Manzo, 380 U.S. 545, 551–552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), that Court, after pointing out that the right to be heard is a fundamental requirement of due process, held that this right can be meaningfully accorded to a parent who has received no notice of proceedings to terminate his parental rights only by granting his motion to set aside the prior decree and hear the case anew, with the burden of proof at the subsequent hearing being upon the person who relies on the existence of the fact of dependency.

█ In this case, then, when Clint's father challenged the termination of his parental rights without notice by the order of April 3, 1970, it was the duty of the trial court, since it found that the father had no notice of, and did not appear in, the prior proceedings, to set such order aside and "hear the case anew," placing upon appel-

---

1. The pertinent provision provides: "Consent shall not be required of parents whose parental rights have been terminated by order of the Juvenile Court or other court of competent jurisdiction; provided, however, that in such cases adoption shall be permitted only upon written order of the court terminating such parental rights. In the order the court shall include a statement indicating whether each parent appeared or had actual notice of the proceedings to terminate his parental rights . . ."

2. The petition filed in the dependent and neglected proceedings, Cause No. 6408, does not appear in the record.

lees, whose right to adopt the child without the father's consent depended upon the termination of the father's parental rights, to establish the fact of dependency.

In their brief, appellees say, "A full reading of the Statement of Facts will show that the Trial Court did not reopen the case to determine afresh the issue of the dependency and neglect of the minor children declared to be dependent in the Judgment in Cause No. 6408." A careful reading of the entire record in this case compels us to agree with appellees.[3]

▇▇▇ An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. If, as was clearly held in Armstrong v. Manzo, supra, this opportunity can be granted at a meaningful time and in a meaningful manner in a case such as this only by setting aside the prior constitutionally infirm decree and considering the case anew, it is apparent that the trial court did not accord Clint's father an opportunity to be heard of the question of termination of parental rights. Under these circumstances, the order of April 3, 1970, cannot

---

3. Counsel for appellees took the position that since there had been no appeal from the decree of April 3, 1970, that judgment was a final adjudication of the question of dependency, and that the court hearing the adoption case and the challenge to the prior decree had no power to go behind that judgment and readjudicate the question of dependency. The trial court, after pointing out that, in addition to the question of whether appellees were fit and proper persons to adopt the child, it had before it appellants' motion to "modify, vacate and set aside" the prior finding of dependency, stated that it would allow appellants' counsel to introduce testimony on whether the court should "modify, vacate and hold for naught" the decree of April 3, 1970. Before proceeding with the introduction of such testimony, counsel for appellants directed the court's attention to certain decisions. The trial court then stated, before appellants had begun to produce evidence concerning the setting aside, vacation and modification of the April 3, 1970, decree: "Well, the Court at this time, has before it the welfare of this young man and that is my main duty here, to try and determine whether or not he should be adopted, and I would think that in accordance with the ruling of April 3, 1970, the Court sustain his judgment on that since he is the one that entered it and let's proceed with the adoption proceedings. . . . [a]s to whether or not this boy is a proper person to be adopted and whether or not these people are proper people to adopt him. That, maybe, will shorten it more than somewhat." When appellants' counsel asked if this meant that " . . . we do not go into that Decree of April 3, 1970," the trial court

said, "That is right. I have already ruled on that once and if I have made a mistake then, I will make another one now."

After both sides had rested, appellants inquired if " . . . the Court [would] like to hear some of the law before he makes a decision." The trial court replied, "The Court was just going to ignore the law and render a decision in accordance with the way it feels would be the best interest of little Clint, and the Court will give the consent for the adoption of Clint and order him to be adopted by [appellees]."

The order entered by the trial court "consenting" to the adoption of Clint by appellees refers to the fact that Clint was found to be a dependent child on April 3, 1970, in Cause No. 6408. It is clear that this order is based on the conclusion of the court that the father's parental rights were terminated by such prior decree. There is nothing to indicate that such prior decree had been set aside and that the father was granted the required full hearing on the issue of dependency. There is no finding of dependency based on evidence presented at a subsequent hearing.

The final judgment effectuating the adoption contains no indication that the decree of April 3, 1970, had been set aside. It does not recite that the court heard evidence anew, nor does it contain any finding of dependency based on such evidence. This final judgment does declare expressly that "all relief prayed for by" appellants "is in all things denied." Part of the relief prayed for by appellants was that the decree of April 3, 1970, be set aside.

be accorded effect as a final adjudication of that question.

In view of the trial court's express refusal to permit appellants "to go into that Decree of April 3, 1970," there is no basis for assuming that the trial court did, in fact, grant the father an opportunity to be heard at a meaningful time and in a meaningful manner.

Even if we apply the more limited interpretation of the requirements of due process enunciated in the opinion of the Texas Supreme Court in DeWitt v. Brooks, supra, the judgment below cannot stand. Chief Justice Alexander clearly held in *Brooks* that a person whose parental rights have been terminated without notice is entitled to a full hearing on the issue of whether sufficient facts existed to authorize the prior finding of dependency upon which the termination of parental rights is based. 182 S.W.2d at 691. Since the trial court "sustained" the order of April 3, 1970, without permitting the father to present testimony on the question of dependency, the *Brooks* opinion requires a reversal. It should be noted that the trial court "sustained" its prior decree before appellees had rested and before appellants had called a single witness. This cannot be considered a "full hearing" on the issue of dependency.[4]

The judgment of the trial court is reversed and the cause is remanded for a new trial.

4. We express no opinion concerning the fitness of appellees to adopt the child, nor whether the child was dependent or neglected on April 3, 1970.